Brian L. Greben, Esq.
LAW OFFICE OF BRIAN L. GREBEN
316 Great Neck Road
Great Neck, NY 11021
(516) 304-5357

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATHERINE FRANK-KLEIN, on behalf of herself
and others similarly situated,

                            Plaintiffs,

                       -against-

NEURO SOLUTIONS 100, LLC d/b/a
NEUROSOLUTIONS 100, NEURODYNAMICS 100,
INC., MICHAEL BINGHAM, and MARK KECK,

                       Defendants.
-----------------------------------------------------------------X

**CASE NO:**

**COLLECTIVE ACTION AND**
**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

1.      Plaintiff, on behalf of herself and all others similarly situated, brings this lawsuit seeking recovery against defendants for defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

2.      Plaintiff, on behalf of herself and all others similarly situated, further brings this lawsuit seeking recovery against defendants for defendants' violations of the New York Labor Law, Art. 6, § 190 *et. seq*., and Art. 19, § 650 *et. seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively "NYLL").

3.      This lawsuit seeks to recover unpaid overtime compensation, wages at employees' regular hourly rates, wages at the applicable minimum wage, spread-of-hours pay, and statutory penalties for plaintiff and her similarly situated co-workers – i.e., defendants' staff who work or have worked at Neuro Solutions 100, LLC d/b/a NeuroSolutions 100 ("NeuroSolutions") and/or NeuroDynamics 100, Inc. ("NeuroDynamics").

4.      Plaintiff retained the Law Office of Brian L. Greben to represent plaintiff, FLSA collective plaintiffs and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

5.      Plaintiff's consent to sue form is attached hereto as Exhibit "1."

6.      Plaintiff, on behalf of herself, further brings this lawsuit seeking recovery against defendants for retaliating against her in response to her demanding the relief described in this Complaint, as well as damages for breach of contract, unjust enrichment, and misappropriation.

## JURISDICTION AND VENUE

7.      The Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA.  The Court has supplemental jurisdiction over the New York state law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in the district because plaintiff resides in the district, defendants conduct business in the district, and the acts and/or omissions giving rise to the claims herein alleged took place in the district.

## THE PARTIES

9.      Plaintiff is a resident of New York, New York.

10.      Defendant NeuroSolutions is a foreign corporation doing business throughout the United States, including New York.

11.      Defendant NeuroDynamics is a foreign corporation doing business throughout the United States, including New York.

12.      NeuroSolutions and NeuroDynamics are part of a single integrated enterprise.

13.      Upon information and belief, NeuroDynamics is a holding company that owns NeuroSolutions.

14.     NeuroSolutions and NeuroDynamics have an annual gross volume of sales in excess of $500,000.

15.     NeuroSolutions and NeuroDynamics share the same customers.

16.     NeuroSolutions and NeuroDynamics sell identical products: a neurostimulation medical device and related therapy solution designed to help treat chronic neuropathic pain, particularly for people with diabetic peripheral neuropathy.

17.     NeuroSolutions and NeuroDynamics share common ownership and management, including the individual defendants named herein, Michael Bingham and Mark Keck (collectively, the "individual defendants").

18.     NeuroSolutions and NeuroDynamics share the same general management and have centralized payroll practices.

19.     NeuroDynamics is simply NeuroSolutions under a different name – the companies have interchangeable staff, management, operations, investors, clients, products, etc.

20.     NeuroDynamics was created as an attempt to shield NeuroSolutions' assets and income from claims from various creditors including, *inter alia,* employees of NeuroSolutions who are owed unpaid wages.

21.     Defendant Michael Bingham is the Chief Executive Officer of NeuroSolutions and NeuroDynamics.

22.     Defendant Mark Keck is the President of NeuroSolutions and NeuroDynamics.

23.     At all relevant times, NeuroSolutions, NeuroDynamics, and the individual defendants (collectively, "defendants") have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

24.     The individual defendants exercised control over the terms and conditions of the

employment of plaintiff, FLSA collective plaintiffs and class members.

25.     Individual defendants have the authority to hire and fire employees, and are in charge of budgeting issues, including payroll.

26.     Individual defendants exercise control over NeuroSolutions and NeuroDynamics' day to day operations, and are actively involved in managing their operations.

27.     To the extent defendants retained employment records, individual defendants exercised control over those records.

28.     Defendants are the former and current employers of plaintiff and those similarly situated under the FLSA and the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29.     Plaintiff brings and seeks to prosecute her FLSA claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b), on behalf of all non-exempt persons currently or formerly employed by defendants, including, but not limited to, several different types of managers, directors, vice presidents, and officers, at any time on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Collective Action Period").

30.     At all relevant times, plaintiff and the FLSA collective plaintiffs are and have been similarly situated and have been subject to defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules, including a) willfully failing and refusing to pay class members at or above the applicable minimum wage and b) willfully failing and refusing to pay class members one-and-one-half times their regular hourly rate for work performed in excess of forty (40) hours per workweek.  The claims of plaintiff are essentially the same as those of the FLSA collective plaintiffs.

31.     The FLSA Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b).

32.     The FLSA collective plaintiffs are readily ascertainable. For purpose of notice and

other purposes related to this action, their names and addresses are readily available from the

defendants. Notice can be provided to the FLSA collective plaintiffs via first class mail to the

last address known to defendants.

## RULE 23 CLASS ALLEGATIONS

33.     Plaintiff brings New York State law Claims for Relief pursuant to the Federal

Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by

defendants, including all non-exempt persons currently or formerly employed by defendants,

including, but not limited to, several different types of managers, directors, vice presidents, and

officers, and any other similarly situated current and former employees holding comparable

positions, on or after the date that is six years before the filing of the Complaint in this case as

defined herein (the "Class Period").

34.     All said persons, including plaintiff, are referred to herein as the "Class." The

class members are readily ascertainable. The number and identity of the class members are

determinable from the records of defendants. The hours assigned and worked, the positions held,

and the rates of pay for each Class member are also determinable from defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily

available from defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

35.     The proposed Class is so numerous that joinder of all class members is

impracticable, and the disposition of their claims as a Class will benefit the parties and the court.

Although the precise number of such persons is unknown, and the facts on which the calculation

of that number are presently within the sole control of defendants, upon information and belief,

there are multiple Members of the Class.

36.     Plaintiff's claims are typical of those claims which could be alleged by any

member of the Class, and the relief sought is typical of the relief which would be sought by each

member of the Class in separate actions. All the class members were subject to the same corporate practices of defendants, as alleged herein, including a) willfully failing and refusing to pay class members at or above the applicable minimum wage; b) willfully failing and refusing to pay class members at their regular hourly rate; and c) willfully failing and refusing to pay class members one-and-one-half times their regular hourly rate for work in excess of forty (40) hours per workweek for work they provided thereafter. Defendants' company-wide policies and practices affected all class members similarly, and defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

37.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by an attorney who is experienced and competent in both Class Action litigation and employment litigation and has previously represented both plaintiffs and defendants in wage and hour cases.

38.     A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to a Class Action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a Class Action. The adjudication of individual litigation

claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class Action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, Class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a Class Action.

39.     Upon information and belief, defendants and other employers throughout the State violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class Actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

40.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether defendants properly compensated plaintiff and class members at or above their applicable minimum wage;

b)  Whether defendants properly compensated plaintiff and class members at their regular hourly rates;

c)  Whether defendants properly compensated plaintiff and class members for overtime by paying them overtime pay for the hours worked in excess of forty (40) hours per workweek within the meaning of New York Labor Law, Art. 6, § 190 *et. seq*., and Art.

19, § 650 *et. seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142;

d)  Whether defendants paid employees New York's "spread of hours" premium when their workdays exceeded 10 hours

e)  The nature and extent of the class-wide injury and the appropriate measure of damages for the Class; and

f)  Whether defendants can prove that their unlawful policies were implemented in good faith.

## **FACTS**

41.    Ms. Frank-Klein signed an employment contract with NeuroSolutions on March 6, 2023.  The contract provided, in relevant part, that:

- Ms. Frank-Klein's job title would be "Chief Operations Officer";

- She would be paid "at a rate of $225,000 per year or $18,750.00 monthly, with a performance-based raise of $25,000 after 6 months in the role of COO, making the annual salary $250,000 or $20,833 monthly.  Payment cycles will be at the 1st and 15th of each month";

- "Equity will be made available in the first six months of employment and future performance bonuses will continue to be part of the overall compensation program"; and

- The contract "may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company."

A copy of the Ms. Frank Klein's contract with NeuroSolutions is annexed hereto as Exhibit "2."

42.    Ms. Frank-Klein worked extraordinarily hard for NeuroSolutions since her hiring and has gone beyond what could have reasonably been expected of her.  Moreover,

NeuroSolutions has greatly benefited from her dedication and talent.  Defendant Michael

Bingham explicitly acknowledged this by writing, *inter alia*, that Ms. Frank-Klein "[made]

things work without the support of staff [she] should have. … When it comes to the billing

process, [she is] the only one who has made it work as it does. That is because of [her] skill and

expertise."

43.     Despite this, NeuroSolutions essentially stopped paying her salary in the

beginning of 2025.  She received her first salary payment for January 2025 in a relatively timely

fashion but did not receive her second monthly salary installment until April 17, 2025.  The two

salary installments owed to Ms. Frank-Klein for February 2025 were not paid until April 22,

2025; the first salary installment owed for March 2025 was not paid until May 1, 2025; the

second salary installment owed for March 2025 and the first salary installment for April 2025

were not paid until October 29, 2025; and the second salary installment for April 2025 was not

paid until December 29, 2025.  Ms. Frank-Klein has not received any compensation from

NeuroSolutions since that time.

44.     Defendants did not pay plaintiff her salary in a timely manner since at least early

January 2025, and have failed to pay her any compensation, timely or otherwise, for the

overwhelming majority of 2025.  Because she did not receive the minimum salary to qualify for

any exemptions she would have been eligible for under either the FLSA or NYLL, she has been

a non-exempt employee since at least the third week of January 2025.

45.     As of the time of the drafting of the instant Complaint, Ms. Frank-Klein is owed

at least nineteen (19) paychecks in their entirety.

46.     Plaintiff, throughout the course of her employment with NeuroSolutions/

NeuroDynamics, has worked six or seven days per week.  She begins working at 7:00 am on

Mondays through Fridays.  She works until between 7:00 pm and 8:00 pm for four days during

Monday through Friday; on the fifth day, she will typically stop working at around 6:30 pm, but

works an additional 1.5 to 2 hours later at home. Plaintiff works an additional 4 hours each weekend. Accordingly, plaintiff works an average of sixty-seven (67) hours per week.

47.     The vast majority of the work plaintiff performed for defendants occurred in New York. Virtually the only work plaintiff performed outside of her home state of New York occurred during occasional business trips to customers and vendors.

48.     Although plaintiff worked sixty-seven (67) hours per week, defendants did not pay her a premium rate of 1.5 times her regular hourly rate for her overtime hours (i.e., hours worked after having already worked forty (40) hours per week), as defendants was required to do under the Federal Labor Standards Act (the "FLSA"), the New York Labor Law (the "NYLL") and supporting regulations.

49.     Plaintiff is not the only employee whom defendants have failed to properly compensate, as defendants have consistently failed to compensate their onshore staff, offshore contractors, and operational partners. As a direct and foreseeable consequence of the Company's prolonged failure to meet payroll obligations, plaintiff continues to be placed in the untenable position of relaying assurances of imminent payment to workers. Ms. Frank-Klein has repeatedly escalated payroll concerns in writing to the individual defendants, expressly stating that she lacks payroll authority and requesting that ownership directly address employees and contractor inquiries regarding payment. Those requests have largely gone unanswered.

50.     Defendants' unlawful failure to pay their workers has caused and continues to cause attrition and disruption among critical operational personnel, including offshore medical-necessity review staff and onshore billing and compliance resources, impairing claim readiness, billing oversight, and reimbursement reliability. These breakdowns have slowed and, at times, halted medical-necessity reviews, increased turnaround times, compromised quality assurance, and have materially degraded operational performance.

51.     Because Ms. Frank-Klein serves as the senior executive responsible for

operational execution, client delivery, and compliance integrity, defendants' ongoing wage violations and failure by those with payroll authority to act have directly impaired her professional credibility and exposed her standing with clients, partners, and employees to continued risk, giving rise to liability under applicable federal and state law.

52.     Because plaintiff is associated with defendants, defendants' failure to pay their workers has harmed plaintiff's reputation with, *inter alia*, physicians, clinics, and other external partners.

53.     Defendants failed to provide Ms. Frank-Klein with equity to which she is contractually entitled.  Over the few months preceding the drafting of the instant Complaint, defendants responded to Ms. Frank-Klein's inquiries about their failure to provide her with the equity and compensation to which she is entitled by misconstruing the equity as a potential "gift" that they were somehow not obligated to provide.

54.     Furthermore, defendants have pressured plaintiff to sign a new employment contract with NeuroDynamics that would have arguably superseded her right to the compensation owed under the current contract (with NeuroSolutions), and used its offer of a "gift" of equity as an incentive.  Ms. Frank-Klein agreed to discuss a new contract but reiterated that she is owed compensation and equity under the current contract.  She also correctly noted that her current contract with NeuroSolutions may only be replaced by a new agreement signed by all parties and advised that a draft of any such new agreement would have to be reviewed by her counsel before being signed.

55.     Incredibly, defendants argued that plaintiff was somehow bound by the terms of the NeuroDynamics contract because she agreed to discuss its potential terms with defendant Bingham (although Bingham ultimately admitted that the prior agreement obligated defendants to provide her with equity). These statements had no legal effect on NeuroSolutions' contractual obligations but demonstrate defendants' lack of good faith compliance with their compensation

obligations.

56.     As noted above, NeuroSolutions and NeuroDynamics are the same business –
they have identical products, customers, investors, management, employees, etc.  It is apparent
that defendants created NeuroDynamics solely to hide their true identity in an effort to escape
liability from NeuroSolutions' creditors, including the workers whom they did not pay.

57.     Defendants failed to provide plaintiff with bonuses that they were contractually
obligated to pay as part of her total compensation, and not as a one-time or discretionary award.
For an executive of Ms. Frank-Klein's level, an annual bonus of approximately $100,000 to
$125,000 (representing approximately 40–50% of base salary) is well within market norms. As
Ms. Frank-Klein has worked for nearly three years without receiving any bonus, her unpaid
bonus damages are conservatively estimated at no less than $250,000.

58.     NeuroSolutions' failure to compensate Ms. Frank-Klein has had a devastating
effect on her family's finances.  Because Ms. Frank-Klein was not paid for an extended period,
she was unable to make planned, tax-advantaged retirement contributions for 2024 and 2025,
including contributions she has historically maximized.  Plaintiff's damages from foregone
retirement contributions and lost tax-advantaged investment growth resulting from defendants'
failure to pay compensation amounts at least $50,000.

59.     In addition, because Ms. Frank-Klein's compensation is paid through her S-
corporation, some of her wage payments are subject to strict year-end funding and administrative
deadlines. Due to the nonpayment, she was unable to fund the applicable retirement plan within
the required timeframe and will not be able to do so until at least April of next year.  This has
permanently foreclosed her ability to make the intended contributions for the relevant tax years.
As a result, she had to borrow from retirement accounts to cover ordinary living expenses, which
created immediate tax and penalty exposure, as well as the loss of long-term, tax-advantaged
compounded growth that would have accrued had those funds been contributed as planned.

Taxes, penalties, and lost future growth resulting from forced borrowing undertaken to meet personal and financial obligations due to defendants' nonpayment of earned wages, total at least $40,000.

60.     Plaintiff's employment obligations include establishing and maintaining a corporation and related compliance structures.  Plaintiff's out-of-pocket expenses and incremental tax liabilities incurred in establishing and maintaining a corporation and related compliance structures, necessitated by defendants' failure to timely pay earned compensation, are conservatively estimated at $10,000. NeuroSolutions' subsequent failure to pay earned wages and honor its compensation obligations directly caused Ms. Frank-Klein to incur expenses and tax consequences associated with that structure.

61.     Furthermore, Ms. Frank-Klein was unable to continue her regular annual contributions toward her son's education through tax-advantaged savings, resulting in the loss of both principal contributions and tax-free compounding. Historically, she has contributed the maximum allowable amount each year. For 2025, that amount is $38,000 for a married couple. Because of the prolonged nonpayment of her compensation, she was unable to make the 2025 contribution by the December 31, 2025, contribution deadline, resulting in the loss of both the principal contribution and the associated tax-free growth and tax write-off.  Defendant has sustained damages stemming from forgone tax-free compounding and missed education savings contributions resulting from delayed or unpaid compensation of at least $10,000.

62.     The financial harm to Ms. Frank-Klein and her family described in the previous paragraphs was a foreseeable and quantifiable financial consequence of defendants' nonpayment.

63.     On January 13, 2026, plaintiff (through counsel) sent defendants a demand letter describing their unlawful actions and omissions and providing them with an opportunity to discuss resolving the matter without resorting to litigation.  Unfortunately, defendants responded to plaintiff's letter by unlawfully retaliating against her: they began excluding her from their

weekly leadership meetings and team meetings. These meetings occurred once per week since plaintiff began working for defendants in March 2023, and are vitally important with respect to plaintiff's ability to perform her job. Defendants decision to suddenly exclude plaintiff without warning has made her job much more difficult to perform, and was clearly retaliatory.

64.    At all relevant times, individual defendants had total operational control over NeuroSolutions and NeuroDynamics.

65.    Individual defendants were in charge of all hiring/firing. If employees needed a raise or a change in schedule, they would seek approval from individual defendants.

66.    Individual defendants implemented and set the wage and hour policy of NeuroSolutions and NeuroDynamics, and would reprimand staff if they did not do their work properly.

67.    Defendants knowingly and willfully operated their business with a policy of not paying wages to plaintiff, FLSA collective plaintiffs, and Class Members.

68.    Defendants knowingly and willfully operated their business with a policy of not paying an overtime at a rate of 1.5 times each employee's regular hourly rate to plaintiff, FLSA collective plaintiffs, and Class Members.

69.    Defendants have consistently suffered, permitted and/or instructed plaintiff, FLSA collective plaintiffs, and Class Members to work over 10 hours per day. Defendants have not paid plaintiff, FLSA collective plaintiffs, and Class Members one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

70.    Defendants have not kept accurate records of wages earned or of hours worked by plaintiff, FLSA collective plaintiffs and Class Members.

71.    Defendants have not furnished accurate records of wages earned or of hours

worked by plaintiff, FLSA collective plaintiffs and Class Members.

72.     Defendants have failed to furnish plaintiff, FLSA collective plaintiffs and Class Members with accurate statements of wages, hours worked, rates paid, and gross wages.

## FIRST CLAIM FOR RELIEF

(FLSA Minimum Wage Claims, 29 U.S.C. § 201, et seq.,
Brought by Plaintiff on Behalf of Herself,
the FLSA Collective Plaintiffs and Class members)

73.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and Class members, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

74.     At all relevant times, defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, defendants have employed, "employee[s]," including plaintiff, the FLSA Collective Plaintiffs and Class members.

75.     Defendants knowingly failed to pay plaintiff the federal minimum wage for each hour worked.  Defendants' failure to pay plaintiff, the FLSA Collective Plaintiffs and Class members the minimum wage was willful within the meaning of the FLSA and federal regulations.

76.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and Class members, seeks damages in the amount of her unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq*. Brought by Plaintiff
on Behalf of Herself, the FLSA Collective Plaintiffs and Class Members)

77.     Plaintiff, on behalf of herself, the FLSA Collective Plaintiffs and Class Members, realleges and incorporates by reference all previous paragraphs.

78.     Throughout the statute of limitations period covered by these claims, the FLSA Collective Plaintiffs and Class Members regularly worked in excess of forty (40) hours per workweek and continue to do so.

79.     At all relevant times, defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the plaintiff, FLSA Collective Plaintiffs and Class Members at one-and-one-half times their regular hourly rates for work in excess of forty (40) hours per workweek, even though plaintiffs, the FLSA Collective Plaintiffs and Class Members have been and are entitled to overtime.

80.     At all relevant times, defendants willfully, regularly and repeatedly failed to pay plaintiff, the FLSA Collective Plaintiffs and Class Members at the required overtime rates, one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

81.     Plaintiff, on behalf of herself, the FLSA Collective Plaintiffs and Class Members, seek damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**

(New York State Minimum Wage Act,
New York Labor Law § 650 et seq. Brought by Plaintiff
on Behalf of Herself, the FLSA Collective Plaintiffs and Class members)

82.    Plaintiff, on behalf of herself, the FLSA Collective Plaintiffs and Class members, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.  Defendants did not pay plaintiff, the FLSA Collective Plaintiffs and Class members minimum wage for all hours worked.

83.    Defendants knowingly failed to pay plaintiff the New York State minimum wage for each hour worked.  Defendants' failure to pay plaintiff, the FLSA Collective Plaintiffs and Class members the minimum wage was willful within the meaning of NYLL § 663.

84.    As a result of defendants' willful and unlawful conduct, plaintiff, the FLSA Collective Plaintiffs and Class members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**FOURTH CLAIM FOR RELIEF**

(New York Overtime Violations,
NYLL § 650 et seq., N.Y. Comp. Codes R. & Regs. § 146 et seq.,
Brought by Plaintiffs, the FLSA Collective Plaintiffs and Class Members)

85.    Plaintiff, on behalf of herself, the FLSA Collective Plaintiffs and Class Members, realleges and incorporates by reference all previous paragraphs.

86.    At all times relevant to this action, plaintiff was an employee and defendants were employers within the meaning of NYLL.

87.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to defendants.

88.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty

(40) hours in any workweek.

89.     Throughout the class period, defendants willfully, regularly and repeatedly failed to pay plaintiffs, the FLSA Collective Plaintiffs and Class Members at the required overtime rates, one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

90.     By failing to pay plaintiffs and the class members overtime wages for all hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, *inter alia*, the regulations in 12 N.Y.C.R.R., Part 146.

91.     As a result of defendants' willful and unlawful conduct, plaintiff, the FLSA Collective Plaintiffs and Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## FIFTH CLAIM FOR RELIEF

(New York Violations, NYLL §§ 650 *et seq.*;
N.Y. Comp. Codes R. & Regs. § 142 -2.4 – spread-of-wages pay)

92.     Plaintiff, on behalf of herself, the FLSA collective plaintiffs and Class Members, realleges and incorporates by reference all previous paragraphs.

93.     Defendants have failed to pay plaintiff and the FLSA collective plaintiffs and Class Members additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workdays – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

94.     Through their knowing and intentional failure to pay plaintiff and the FLSA collective plaintiffs and Class Members spread-of-hours pay, defendants have willfully violated

NYLL, Article 19, §§ 650 et seq. and the supporting New York State Department of Labor Regulations, including N.Y. Comp. Codes R. & Regs. § 142 -2.4.

95.    Due to defendants' willful violations of the NYLL, plaintiff and the FLSA collective plaintiffs and Class Members are entitled to recover from defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL and the supporting New York State Department of Labor Regulations, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CLAIM FOR RELIEF

### (Retaliation – FLSA)

96.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

97.    Defendants restricted plaintiff's employment because plaintiff complained of defendant's unlawful payment practices, and because plaintiff continued to demand payment of her wages.

98.    Defendants, by the above acts, have violated 29 U.S.C. § 215(a)(3), by retaliating against plaintiff for asserting her rights under the FLSA.

99.    Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury and monetary damages as a result of defendant's acts unless and until this Court grants the relief requested herein.

## SEVENTH CLAIM FOR RELIEF

### (Retaliation – NYLL)

100.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

101.    Defendants restricted plaintiff's employment because plaintiff complained of defendant's unlawful payment practices, and because plaintiff continued to demand payment of

her wages.

102.    Defendants, by the above acts, have violated NYLL § 215(1)(a), by retaliating against plaintiff for asserting her rights under the NYLL.

103.    Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury and monetary damages as a result of defendant's acts unless and until this Court grants the relief requested herein.

## EIGHTH CLAIM FOR RELIEF

(Breach of Contract)

104.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

105.    On March 6, 2023, plaintiff and NeuroSolutions entered into an enforceable, binding contract pursuant to which the parties agreed, *inter alia,* that "[e]quity will be made available in the first six months of employment and future performance bonuses will continue to be part of the overall compensation program"

106.    Plaintiff diligently performed all of the duties assigned to her pursuant to the agreement. Nonetheless, defendants failed to perform their material obligations under the agreement. Defendants' breaches of the contract included, *inter alia,* a) failing to issue plaintiff the equity to which she was entitled and b) failing to pay her the bonuses to which she was entitled.

107.    Plaintiff has suffered actual damages as a result of the breaches of the agreement by defendants and is entitled to recover such damages and interest in an amount as the proof at trial may warrant.

108.    Said actions of defendants were undertaken in knowing or reckless disregard of their obligations to plaintiff, and with knowing or reckless disregard of the harm that their actions would cause plaintiff, thereby entitling plaintiff to punitive damages in an amount to be

determined at trial.

## NINTH CLAIM FOR RELIEF

### (Unjust Enrichment)

109.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

110.    As a result of the aforesaid wrongful actions of defendants, Defendants have been and will continue to be unjustly enriched at Plaintiff's expense.

111.    Plaintiff is entitled to an accounting from Defendants and to an award of damages equal to all monies unjustly received by them as a result of their wrongful conduct, and to damages and interest in an amount that the accounting will determine.

## TENTH CLAIM FOR RELIEF

### (Misappropriation)

112.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

113.    Defendants intentionally and wrongfully misappropriated the equity and performance bonuses to which she was entitled.

114.    As a result of the intentional and wrongful conduct of defendants, plaintiff has been injured, for which she is entitled to recover damages and interest in an amount as the proof at trial may at warrant.

115.    Said actions of defendants were undertaken in knowing or reckless disregard of their obligations to plaintiff, and with knowing or reckless disregard of the harm that their actions would cause her, thereby entitling plaintiff to punitive damages in an amount to determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of herself and the FLSA collective plaintiffs and Members of the Class, prays for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA collective plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Members of the FLSA opt-in Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of plaintiff as representatives of the FLSA collective plaintiffs;

C.    Designation of this action as a Class Action pursuant to F.R.C.P. 23;

D.    Designation of plaintiff as representatives of the Class;

E.    An award of equity;

F.    An award of damages, according to proof, including punitive and liquidated damages, to be paid by defendants;

G.    Penalties available under applicable laws;

H.    Costs of action incurred herein, including expert fees;

I.    Attorney's fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I.    Pre-Judgment and post-judgment interest, as provided by law; and

J.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself, the FLSA collective plaintiffs and Class Members, hereby

demands a jury trial on all causes of action and claims with respect to which they have a right.

Dated: Great Neck, New York
         February 4, 2025

                                        LAW OFFICE OF BRIAN L. GREBEN


                                         /s/ Brian L. Greben
                                        _____
                                        Brian L. Greben
                                        316 Great Neck Road
                                        Great Neck, NY 11021
                                        (516) 304-5357